UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JERMEKA PERTRICE JOHNSON-LEE, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION: 2:23-cv-229 |
| | § | |
| TEXAS A&M UNIVERSITY- | § | |
| CORPUS CHRISTI | § | |
| | § | |
| Defendants. | § | JURY TRIAL REQUESTED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Comes now Plaintiff, Jermeka Pertrice Johnson-Lee, by and through counsel, and in support of her claims against the above-named Defendant, Texas A&M University-Corpus Christi, files this complaint and respectfully states:

## NATURE OF THE ACTION

1. Ms. Johnson-Lee brings the following claims in this lawsuit which, to the extent that the claims are factually or legally inconsistent, are pleaded alternatively pursuant to Federal Rule of Civil Procedure 8: claims for creation of a hostile work environment, unlawful harassment, disparate treatment and discrimination based upon race and religion and retaliation for opposing and reporting unlawful race discrimination and filing a charge of discrimination with the EEOC, under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

1

## PARTIES

2. Plaintiff, Jermeka Pertrice Johnson-Lee, is currently a resident of Nueces County, Texas and she is a United States citizen.  Ms. Johnson-Lee was known as Jermeka Morrison at the time of her employment made the basis of this lawsuit.

3. Defendant, Texas A&M University – Corpus Christi (hereinafter "TAMUCC"), is a public higher-level state educational institution located in Nueces County, Texas. Defendant may be served by serving its President: Dr. Kelly M. Miller, 5757 TAMUS Corpus Christi, TX 78412-5757. This entity was Ms. Johnson-Lee's employer.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action by reason of 28 U.S.C. §1331 and §1343, in that Plaintiff, pursuant to Title VII, seeks to redress race discrimination and retaliation she experienced at the hands of Defendants. Venue is proper pursuant to 28 U.S.C. §1391 because the Defendant does business within the geographical boundaries of the United States District Court for the Southern District of Texas, Corpus Christi, Division.

## FACTS

5. Ms. Johnson-Lee is an African-American, Black female who was employed with TAMUCC as an Assistant to the Director of SSS Teacher Prep from approximately August 2015 through November 1, 2016. She then went to work for the Antonio E. Garcia Arts and Education Center (hereinafter "Center") located at 2021 Agnes Street, Corpus Christi,

Texas 78405, where she worked starting on November 1, 2016.  Ms. Johnson-Lee had a very good work history in her position.  However, her work environment changed dramatically for the worse when a new director, Esmeralda Herrera-Teran, a Hispanic female, was installed at the Center in or about December 2020.

6.  Having worked at the Center for several years, Ms. Johnson-Lee felt comfortable, performed well and had even held the position of Interim Director for the Center twice.

7. On December 14, 2020, Ms. Herrera-Teran took a tour of the Center with Ms. Johnson-Lee.  During the tour, Ms. Herrera-Teran asked what Ms. Johnson-Lee thought about moving her desk to the back storage room/counseling playroom.  She told Ms. Johnson-Lee that she did not want her face to be the front of the Center.  Ms. Johnson-Lee asked her what was wrong with her face and she did not respond. From this point forward, Ms. Johnson-Lee has been subjected to very frequent and unrelenting harassment from Ms. Herrera-Teran because of her race, Black, African American, which adversely impacted her working environment making it very difficult to perform her work.  Ms. Johnson-Lee was also denied several employment opportunities at TAMUCC. Examples of the hostile discriminatory working environment and discriminatory acts follow.

8. After Ms. Herrera-Teran assumed the position of Director of the Center, almost immediately, approximately December 15-18, 2020, an employee of TAMUCC, Melissa Adames, asked Ms. Johnson-Lee how she liked her new office location.  Ms. Johnson-Lee did not understand what she meant by the comment.  She told Ms. Johnson-Lee that Ms.

Herrera-Teran is telling everyone that she no longer wanted her to be the "face" of the Garcia Center.  She also clarified that she asked her about her new office location because she thought that she had been moved to the back storage/counseling room because of Ms. Hererra-Teran's statements. Ms. Herrera-Teran continued to make comments to Ms. Johnson-Lee and others about moving Ms. Johnson-Lee to the back storage/counseling room from January 2021 until April 2021. These comments were made because Ms. Johnson-Lee is African-American. Between June 2021 and the date of her termination, Ms. Johnson-Lee worked in the storage room when directed by Ms. Herrera-Teran.

9. During the TAMUCC Christmas vacation break in December 2020, Ms. Herrera-Teran came into the Center and painted the main offices and hallway.  She also moved Ms. Johnson-Lee's furniture into the back storage/counseling room.  Her diploma was placed on the floor behind an office desk. Ms. Herrera-Teran also bought a new reception desk that was placed 5 feet away from Ms. Johnson-Lee's office desk.  The new desk would not allow visitors to stop at Ms. Johnson-Lee's desk in order that she could greet them and respond to their needs. It was clear that Ms. Herrera-Teran was trying to have visitors and staff avoid coming to see Ms. Johnson-Lee's "face." Also, Ms. Herrera-Teran placed Christian crosses on Ms. Johnson-Lee's desk.  This made her feel extremely uncomfortable because she it was a comment about specifically her because the crosses were only placed on Ms. Johnson-Lee's desk, all contents of her desk were removed and her Hispanic co-worker was not treated in a similar manner. These extreme actions made Ms. Johnson-Lee

4

feel singled out as an African-American employee. The conscious display of multiple Christian symbols on Ms. Johnson Lee's desk was offensive and violated Title VII.

10.     On January 8, 2021, Ms. Johnson-Lee's reported the comments that were being made about her by Ms. Herrera-Teran regarding the racial harassment, to Richard Ricard, Associate Dean of COEHD Graduate Programs, Research and Community Engagement. Ms. Johnson-Lee told Dr. Ricard that Ms. Herrera-Teran is telling co-workers that she does not want her "face to be the face of the Garcia Center." She continued to tell him, "What was wrong with my face? Is it the wrong color?"

11.     In the Spring of 2021, Ms. Herrera-Teran again asked Ms. Johnson-Lee if she was sure that she did not want to be placed in the back storage/counseling room. Ms. Johnson-Lee told her that she did not.  Ms. Herrera-Teran told Ms. Johnson-Lee that she wanted people to stop bothering her which made no sense because, at that time, Ms. Johnson-Lee was the Administrative Associate IV and assisting employees and visitors as they enter the Center was part of her job duties. Ms. Herrera-Teran also asked Ms. Johnson-Lee to call building services to provide a quote to build a wall which would separate her from the entrance to the Center where no one would see her face.

12. Continuing from December 2020 to May 2021, when an African American intern and/or student, Ashley Pointer, Antoine Charles, Melanie Clark and Adachukeu Uzondu, asked Ms. Johnson-Lee questions, Ms. Herrera-Teran would get up and abruptly ask them if she could help them and what did they need. When those interns and/or students

left, Ms. Herrera-Teran would come to Ms. Johnson-Lee's desk and tell her that she "wasn't getting work done" and Ms. Herrera-Teran wanted her to go to the back storage room and work.  Ms. Herrera-Teran was creating a pretext to justify removing Ms. Johnson-Lee from being the "face" of the Center to the back and stereotyping her as socializing with other African Americans instead of working.  Ms. Johnson-Lee did her job and did not improperly socialize.

13.     Frequently and continuing, Ms. Herrera-Teran threatened to put Ms. Johnson-Lee in the back storage/counseling room. Also, frequently she screamed at her in a belittling manner as if she were a child in front of others to go to the back storage/counseling room to work. She did not treat any non-African-American employees in this manner.

14.     In January 2021, Ms. Herrera-Teran instructed Ms. Johnson-Lee that she could no longer work from home on Wednesdays.  At this time, approximately 75% of the staff were working from home including others who report to Ms. Herrera-Teran.  No non-African-American employee, such as the work study staff, were treated similarly to Ms. Johnson-Lee and required to come to work. At this time, COVID 19 protocols were in place.

15.     On February 15, 2021, even though Corpus Christi was experiencing a major freeze which knocked out power to most of the City, Ms. Herrera-Teran instructed Ms. Johnson-Lee to log into a meeting using her computer.  Ms. Johnson-Lee could not because

she did not have power and TAMUCC was closed.  This was harassment as she knew her instruction to Ms. Johnson-Lee was impossible and she was the only one treated in this manner.

16.     On February 20, 2021, Ms. Herrera-Teran instructed Ms. Johnson-Lee not to talk to anyone coming into the Center. Again, as she had continued to do, she threatened her with moving her to the storage/counseling room.  Part of Ms. Johnson-Lee's job duties were to speak with and assist those coming into the Center.

17.     On or about February 24, 2021, Ms. Johnson-Lee met with Dr. Ricard to discuss the hostile working environment created by Ms. Herrera-Teran. He told Ms. Johnson-Lee that he would talk to Ms. Herrera-Teran about it.

18.     On February 25, 2021, Ms. Herrera-Teran told Ms. Johnson-Lee to no longer discuss her reports of her working environment with Dr. Ricard. She also gave Ms. Johnson-Lee a communication on expectations due to the freeze incident.  Ms. Herrera-Teran singled Ms. Johnson-Lee out and punished her for the impossibility of her not being able to log onto her computer on February 15, 2021 due to a natural disaster. No other employee was similarly treated.  All other employees are non-African American.

19.     On February 25, 2021, Ms. Johnson-Lee sent Dr. Ricard an email about continued retaliation by Ms. Herrera-Teran.

20.     In approximately February 2021, an employee told Ms. Johnson-Lee that Ms. Herrera-Teran went to the College of Education and Human Development and told staff

that Ms. Johnson-Lee was hard to work with and that she could not work with her anymore. This statement about Ms. Johnson-Lee being hard to work with was not true.

21.     In March 2021, Ms. Herrera-Teran pulled Ms. Johnson-Lee into her office and asked her why she was still working here.  She began printing out job applications and giving them to her to try to encourage her to leave.  She even gave Ms. Johnson-Lee an application to work at the courthouse which has nothing to do with TAMUCC. She was trying to get Ms. Johnson-Lee to leave not only the Center, but TAMUCC.

22.     On March 17, 2021, Ms. Herrera-Teran instructed Ms. Johnson-Lee to purchase items for her daughter from Amazon using the TAMUCC computer.  It was not appropriate to require Ms. Johnson-Lee, a state employee, to use state equipment to purchase her family member items during work time. Ms. Johnson-Lee also felt like she wanted her to do her "bidding" as if she was her personal servant – a stereotype of African-Americans. However, Ms. Johnson-Lee felt coerced to do this and that she could not tell her no.

23.     On April 19, 2021, Ms. Johnson-Lee reached a point that she could no longer tolerate the working environment and she put in her resignation and to start a new job with TAMUCC on May 1, 2021.  In a strange twist, after she put in her resignation, Ms. Herrera-Teran offered her a $20,000 raise on April 25, 2021 to stay.  Ms. Herrera-Teran cried to her for almost 2 hours.  This was one of the most uncomfortable situations that Ms. Johnson-Lee had been in.  She considered Ms. Herrera-Teran's offer and believed that she

had turned over a new leaf and understood that she brought value to the Center and that she would stop her racial harassment.  As well, the $20,000 raise was difficult to turn down. Therefore, on May 4, 2021, Ms. Johnson-Lee accepted the offer.

24.     Ms. Johnson-Lee's hopes were that Ms. Herrera-Teran had realized the error of her discrimination against her.  However, those hopes quickly vanished when on June 11, 2021, Ms. Johnson-Lee endured two particularly humiliating and demeaning assignments by Ms. Herrera-Teran.  The first was, when she was preparing for the children in the Art Gallery to leave, Ms. Johnson-Lee grabbed a trash can and stood at the door.  As the children were going to leave the room, they would throw their trash into the can. This was an easy and logical plan.  Instead, Ms. Herrera-Teran grabbed the trash can from her hands and said that this is not how she wanted it done in her camp. She then let the children leave and, with her finger pointed in Ms. Johnson-Lee's face, she ordered her to pick up each child's trash from the tables and then clean each table. The Center has custodial staff to clean the desks.  Ms. Herrera-Teran's instructions were meant to demean Ms. Johnson-Lee because of her race by requiring her to perform duties outside of her job description to belittle her position and humanity.  Later that day, Ms. Herrera-Teran came to Ms. Johnson-Lee's desk in front of staff, volunteers and her co-workers and instructed her to clean the restroom.  Again, this is not Ms. Johnson-Lee's job duty.  TAMUCC employs janitors to clean the facilities.  Ms. Herrera-Teran then told her that, if there is any fecal matter in the toilets, that she wanted her to make sure that she could not see one drop of it.

25.     Ms. Johnson-Lee called Human Resources and reported this conversation. Their response did not respect the humiliation and racial indignity of how Ms. Herrera-Teran treated her. Ms. Johnson-Lee then called the Associate Dean, Dr. Ricard, and explained what happened.

26.     Regarding the $20,000 pay raise, Ms. Johnson-Lee did not receive it.  She received a lesser raise after she spoke with Human Resources and others in her chain of command.  She learned that Ms. Herrera-Teran had not filed the paperwork for the raise even though Ms. Johnson-Lee accepted her offer of a $20,000 pay raise. The accepted offer which was not implemented was an attempt to get Ms. Johnson-Lee to leave after Ms. Herrera-Teran did not follow through with the pay increase. The entire sequence of events appears to be a cover-up for racial discrimination.

27.     On June 14, 2021, Ms. Herrera-Teran gave Ms. Johnson-Lee an employee warning which was not justified. The write-up was regarding the June 11, 2021 incident involving her order to her to clean the tables.  It was discriminatory and retaliatory as were her other acts.

28.     On June 28, 2021, in retaliation for Ms. Johnson-Lee's protected act of reporting her discrimination, Ms. Herrera-Teran changed her employee evaluation that had already been submitted in May 2021.  Some of the changes included an intentionally false representation that she had been given training to complete and did not. This was untrue and made to create a justification to discriminate and retaliate against her.

29.     On July 13, 2021, Ms. Herrera-Teran chastised and wrote Ms. Johnson-Lee up for trumped-up reasons that allegedly happened in June 2021 that she was not getting her work done and that she would not stop talking to people.  She also included an unfounded issue related to the University Police Department report.  She tried to use these allegations to force Ms. Johnson-Lee to the back storage room/counseling room. These allegations were not true and made to discriminate and retaliate against her. Ms. Johnson-Lee provided a written response to the warning.

30.     On July 27, 2021, Ms. Herrera-Teran instructed Ms. Johnson-Lee to do more of her personal business – specifically to order food for her daughter's baby shower.  Again, she was treating Ms. Johnson-Lee as if she was a domestic employee subject to her personal whims.  African-Americans are stereotyped as performing such job positions and that is how she felt that she was treating her because of race.

31. On numerous occasions, at any given moment Ms. Herrera-Teran's family would show up during meetings between Ms. Herrera-Teran and Ms. Johnson-Lee.  Her family sat in the room with them as they met discussing official business. Ms. Herrera-Teran instructed Ms. Johnson-Lee to clean things, raise her voice at her in an insulting and belittling manner in front of them. This is more treatment and stereotyping of Ms. Johnson-Lee because of her race, African-American, that she was belittled and made to perform domestic "chores" that are not part of her job duties.

32.     In August 2021, Ms. Herrera-Teran told Ms. Johnson-Lee she cannot believe her daughter is bringing in her first "little Nigerita." Ms. Johnson-Lee was humiliated. Ms. Herrera-Teran was embarrassed to have a black grandchild and she did not refer to her by name, but instead her color.

33.     In September 2021, an intern, Adachukeu Uzondu, who is from Africa, was transitioning out of her duties in order to pursue further graduate studies.  Ms. Uzondu is of African ethnicity and ancestry as is Ms. Johnson-Lee.  Ms. Herrera-Teran told Ms. Johnson-Lee that she did not want her there because her accent was too heavy, and no one would be able to understand her. The director continued to tell Ms. Johnson-Lee that she did not want her there. Based upon her body language and the way she spoke, it was not just Ms. Uzondu's accent that was an issue, but it was also the fact that her race is African-American.   Ms. Johnson-Lee was embarrassed and humiliated because of these discriminatory and unlawful statements. Ms. Johnson-Lee did not respond to the comments.

34.     On October 7, 2021, the Center had been short-handed. Ms. Johnson-Lee was contacted by AARP, which provides free labor, to see if clerical staff was needed. They were sending a morning staff person and an evening staff person. In the past, Ms. Herrera-Teran and Ms. Johnson-Lee discussed bringing two more people on as support. She wanted one person in the morning and one person in the evening. Ms. Johnson-Lee called Ms. Herrera-Teran while she was on vacation to let her know a little about each person. The

morning staffer was a bilingual Hispanic employee and the evening staffer was an African-American employee. When Ms. Johnson-Lee mentioned the African-American employee, Ms. Herrera-Teran immediately said, "No, I don't want two of y'all in the front."  Ms. Johnson-Lee asked her what she meant by "two of us," and she did not respond, but just said to "get rid of her or she can stay to clean the restrooms or do custodial or janitorial work." This comment was shocking and solidified Ms. Johnson-Lee's belief that Ms. Herrera-Teran was stereotyping African-Americans as domestic servants.  Ms. Herrera-Teran continued to tell Ms. Johnson-Lee that AARP staff are too old and don't know how to work on the computer unless you show them. Ms. Johnson-Lee followed her instructions and let Mary Slusher, with AARP, know that the Center did need them at this time. Ms. Herrera-Teran then said we can keep the morning person – who is a bilingual Hispanic. Ms. Herrera-Teran then hung up with Ms. Johnson-Lee and continued the conversation through Teams. Ms. Johnson-Lee called AARP as instructed by Ms. Herrera-Teran and Ms. Slusher asked why they were turning down the second person to work during the afternoon. She asked if the African American AARP participant could stay working at least for the next month. Ms. Johnson-Lee asked Ms. Herrera-Teran, and she said no. Later, Ms. Herrera-Teran told Ms. Johnson-Lee she called AARP and fixed it. The morning Hispanic AARP staff was asked to change her hours to 1:00 pm -5:00 pm., but she could not. However, Ms. Herrera-Teran accommodated the schedule flexibility needed by the Hispanic AARP staff.

35. On October 15, 2021, Ms. Johnson-Lee wrote to Dr. Ricard about Ms. Teran's harassment and conduct.

36. On October 18, 2021, Ms. Johnson-Lee met with Dr. Ricard and he made it clear that he was tired and frustrated by Ms. Johnson-Lee's reports.

37. On October 25, 2021, Ms. Johnson-Lee filed a complaint by phone with TAMU-System in College Station, Texas.  The complaint was assigned to TAMUCC for handling. She reported specifically that race was an issue in her complaint with the TAMU-System.

38. Also, on October 25, 2021 – Ms. Herrera-Teran asked Ms. Johnson-Lee to give her access to her email – meaning to turn over her passwords. Ms. Johnson-Lee wrote to Civil Rights Reporting; Toni Nerren, Associate Director of HR; Employee Relations; and Dr. Nicole A. Roberson, Sr. CAAEP, SHRM-CP, Director, Equal Opportunity and Diversity, Office of General Counsel – System Ethics and Compliance Office. The email to Employee Relations stating (and the others similarly stating) the following:

> Good morning Employee Relations team – I trust this email finds you well. This morning during a meeting with my director Esmeralda Herrera-Teran, I was told to give her access to my email. Mrs. Esmer continued with, it is not up for discussion, and I want access to your email. How do I proceed? This email is not to overstep. I document various harassment, intimidating, and bullying issues from my supervisor and keep personal information within my email. I am afraid to lose this job and I am very tired of the constant bullying, belittling, and unprofessionalism that goes on in my workplace since my director started back in December 2020. I've reached out to her supervisor, Human Resources, and our local EEO with no response.

39. On October 28, 2021, Ms. Johnson-Lee wrote to Dr. Ricard about the retaliation after she made protected reports, but he did not respond.

40. On November 20, 2021, Ms. Herrera-Teran instructed Ms. Johnson-Lee to sweep the floor and when a volunteer started sweeping, Ms. Herrera-Teran was visibly upset that Ms. Johnson-Lee was not performing the work and someone else had taken over the task as Ms. Johnson-Lee was busy doing several other things. Sweeping is not part of Ms. Johnson-Lee's job duties.  Again, Ms. Herrera-Teran assigned Ms. Johnson-Lee a demeaning domestic task because of her race.

41. On November 22, 2021, Ms. Morrison followed-up with her civil rights complaint and investigation with Dr. Diaz and requested not to work with her because of her association with Ms. Herrera-Teran.

**From:** Jermeka Morrison <mrslvinson@yahoo.com>
**To:** Diaz, Kristie <kristie.diaz@tamucc.edu>
**Sent:** Tuesday, November 23, 2021, 11:16:36 AM CST
**Subject:** Re: Follow-up, regarding Complaint

Hi Mrs. Diaz - thanks for following up. Due to recent events and Esmers behavior today. I now know she is aware of the situation. I prefer not to work with you on this investigation at this point. Don't misunderstand, I believe you are a kind person and easy to talk to. I would prefer to finish the investigation with personnel not here in Corpus Christi? My work environment is very hostile at the moment.

- Jermeka Morrison
361-775-8422

42. On the morning of November 23, 2021, Ms. Teran issued Ms. Morrison a Memorandum of Unacceptable Behavior which was trumped-up and untrue as explained in detail in Ms. Johnson-Lee's response.  This memorandum is false in its entirety and does an injustice to Ms. Johnson-Lee as an employee. Ms. Johnson-Lee tried to work in the

current atmosphere. Ms. Herrera-Teran degraded her almost daily, screamed at her often, and instructed her to do things not related to her role as a Texas A&M University of Corpus Christi employee. The Memorandum was part of retaliation as Ms. Herrera-Teran was trying to force her to quit.

43.   On November 23, 2021, Ms. Morrison notified the University investigating authority of harassment and asked for an outside authority to investigate and she sent John LaRue an email about Ms. Herrera-Teran being leaked information about her grievance.

**From:** Morrison, Jermeka
**Sent:** Tuesday, November 23, 2021 4:48 PM
**To:** LaRue, John <John.LaRue@tamucc.edu>
**Cc:** Ricard, Richard <Richard.Ricard@tamucc.edu>; Scott, David <David.Scott@tamucc.edu>
**Subject:** RE: Amended Notice of Allegations

Good Afternoon Mr. LaRue – I am finishing up my detailed documentation. It does seem strange that after I filed my grievance, the Director has also done so again with frivolous claims. It looks like someone is always giving her a heads up as this only happens during certain things. I can prove that she is falsifying information even in this notice to document unacceptable behavior. I have requested a meeting within our department to discuss this matter to avoid any surprise repercussions.

If you have questions or comments you can return them by this e-mail or call 361-825-3600.

Thank you!

44.   On November 23, 2021, Ms. Johnson-Lee left work at 12:17 p.m. because her godmother walked into the Center with her daughter at noon. She tried calling, but her phone was on silent. Ms. Johnson-Lee's daughter's wire and brace were broken on her braces and were scrapping her gums. She had blood in her mouth. She was trying to be a

16

trooper, but she needed to immediately go to the dentist. Ms. Johnson-Lee called and she was able to get an emergency appointment and she let Ms. Herrera-Teran know. However, Ms. Herrera-Teran was rude to Ms. Johnson-Lee, despite knowing the situation. Ms. Johnson-Lee told her that she needed to leave to take her daughter to the dentist because of this emergency. She explained that she was able to get a 1:00 pm appointment. Ms. Herrera-Teran told Ms. Johnson-Lee that she needed to work up until it was time for her to leave. Ms. Johnson-Lee explained that her daughter's mouth was full of blood, and it would take her time to get there. Ms. Herrera-Teran asked Ms. Johnson-Lee if she was coming back, and she responded that is the plan. Ms. Johnson-Lee is treated differently when she asked for time off compared to non-African American employees. Mr. Dominguez, a Hispanic male, was allowed to leave any time to pick up his grandchildren or if he was having personal issues at home.  Ms. Johnson-Lee was also written up for this emergency medical event and the information given in the write-up against Ms. Johnson-Lee was false. Ms. Herrera-Teran required Ms. Johnson-Lee to go to the computer and log in the hours that she would be gone for the day.  She did not know how many hours that she would be gone. Ms. Johnson-Lee asked Ms. Herrera-Teran if she could input the hours, she would be absent to care for her daughter's emergency medical condition when she returned to work. Ms. Herrera-Teran said no.  Ms. Johnson-Lee asked Ms. Herrera-Teran if she could use the time that she worked on Saturday, November 20, 2021, to cover the absence.  She told her no again.  However, there is a Hispanic employee named Brian Torres, who is claiming

30+ hours every two weeks, but he is not working the entire hours reported with Ms. Herrera-Teran's knowledge.

45.     The outburst, screaming, demeaning duties, constant harassment, and inappropriate conversations were too much for Ms. Johnson-Lee to handle and it disrupted not only her work life, but also her home life because of the emotional stress it was placing on her. She had reported not only her concerns about her unlawful treatment to her director and her superior, but she also made reports of racial discrimination through TAMUS policies including to a supervisor, Dr. Ricard, Human Resources and TAMUS.  Ms. Herrera-Teran told Ms. Johnson-Lee that she knew some people in the President's Office and that they have helped her in the past and she even went so far as to explain personal information about that individual to Ms. Johnson-Lee.  She was sending Johnson-Lee the message that she is not worried about her discrimination and retaliation reports or her unlawful discriminatory behavior because she has friends in high places.  Ms. Herrera-Teran also told these things to Ms. Johnson-Lee to keep her from reporting her unlawful discriminatory conduct.  It made Ms. Johnson-Lee fearful to report Ms. Herrera-Teran's unlawful conduct.

46.     The harassment and discrimination were so severe that it caused Ms. Johnson-Lee to suffer from anxiety from all the stress of Ms. Herrera-Teran's outlandish racial discrimination against her and other African Americans and Ms. Johnson-Lee also suffered from panic attacks from the retaliation, harassment, and verbal abuse. Despite Ms.

Johnson-Lee's use pf TAMUS protocol, the situation continued to escalate. Therefore, on December 7, 2021 Ms. Johnson-Lee filed a dual charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission based upon harassment and discrimination because of her race, African-American, and for retaliation for reporting and opposing unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, and Chapter 21 of the Texas Labor Code. This EEOC charge was assigned No. 451-2021-00670.  Ms. Johnson-Lee's employer received a copy of this charge at least by December 9, 2021.

47.     The day after Ms. Johnson-Lee notified her employer of her EEOC Charge, her employer terminated her employment.  The discrimination and retaliation continued past Ms. Johnson's Lee's employment termination also because, although TAMUCC has been aware of her reports and opposition to race discrimination since at least January 2021 and, an "investigation" has been pending since October 25, 2021, TAMUCC had yet to conduct an investigation and failed to take prompt and appropriate action and, instead, chose to terminate her employment the day after it received her EEOC charge of discrimination based upon trumped-up reasons. Ms. Johnson-Lee filed a charge of discrimination related to the retaliatory termination and other acts and this charge was assigned Charge No. 451-2022-00757.

48.     On December 17, 2021, Ms. Johnson-Lee filed a Complaint and Appeal of her employment termination. Ms. Johnson-lee never heard anything in response to her

Complaint and Appeal of her termination which is contrary to the University's policies and procedures and a violation of the University's obligation to investigate a discrimination complaint.

49.      Ms. Johnson-Lee received Notices of Right to Sue from the United States Department of Justice related to claims covered under Equal Employment Opportunity Commission Charge Numbers 451-2021-00670 and 451-2022-00757 on June 22, 2023. Exhibit A - Notices of Right to Sue. This lawsuit is timely as it is filed within 90 days of receipt of the Notices of Right to Sue.

## DISCRIMINATION AND RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

50.      Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49.

51.      To the extent that this claim is factually or legally inconsistent, it is pleaded alternatively pursuant to Federal Rule of Civil Procedure 8.

52.      Ms. Johnson-Lee was an employee within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e.

53.      TAMU-CC is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e, and it was Ms. Johnson-Lee's employer. TAMU-CC had more than 500 employees at the time of the events made the basis of this lawsuit.

54.     Ms. Johnson-Lee alleges that she was harassed and discriminated against because of her race, Black, African-American, discriminated against because of religion, and retaliated against for opposing and reporting unlawful discrimination to her employer and filing an EEOC Charge of Discrimination.

55.     The unlawful employment practices complained of were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

56.     Ms. Johnson-Lee seeks damages, past and future, for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, injury to reputation and other nonpecuniary losses that she suffered as a result of Defendant's unlawful retaliatory actions.  Ms. Johnson-Lee also seeks damages for wage loss, lost benefits, and other pecuniary losses, past and future, as allowed by law, attorney's fees, costs and injunctive relief in the form of reinstatement, or alternatively, front pay, and any other relief as allowed by under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, 42 U.S. Code § 1981a, and as otherwise allowed by law.

57. This action is timely filed within 90 days of receipt of the Notices of Right to Sue issued by the U.S. Department of Justice. All administrative requirements have been exhausted.

## Jury Trial Requested

58. Plaintiff requests a trial by jury.

**Prayer**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant and award Plaintiff the following:

1. Damages, plus interest including, for wage loss and lost benefits, past and future, and other pecuniary damages as allowed by law;

2. Compensatory damages arising from emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation and other nonpecuniary losses, past and future, as allowed by law;

3. All damages and relief as allowed for a claim under Title VII of the Civil Rights Act of 1964, as amended;

4. Prejudgment interest as allowed by law;

5. Post-judgement interest as allowed by law;

6. Attorney's fees as allowed by law;

7. Court costs and expenses as allowed by law;

8. Equitable relief as appropriate and allowed by law, including, but not limited to reinstatement or front pay, if reinstatement is not granted;

9. Such other legal or equitable relief ultimately justified by the proof of this case.

Respectfully Submitted,

By: ___/s/ Gay E. Gilson
Gay E. Gilson
State Bar No. 00784131/Fed I.D. 16385
Law Offices of Gay E. Gilson
5525 S. Staples, Suite B3
Corpus Christi, Texas 78411
Tel: (361) 887-0552
Fax: (361) 887-0554
Email: gegilson@gilsonlaw.com
Attorney in Charge for Plaintiff

John E. Schulman
SBN 17833500
Southern District of Texas Bar No. 6959
jschulman@schulmanlaw.com
Margaret K. Schulman
SBN 17833900
Southern District of Texas Bar No. 203068
mschulman@schulmanlaw.com
THE SCHULMAN LAW FIRM, P.C.
6440 North Central Expressway, Suite 605
Dallas, Texas 75206
214-361-2580 tel/214-361-6580 facsimile
Attorneys for Plaintiff